R.P. CARBONE CONSTRUCTION
COMPANY, Petitioner,

v.

The OCCUPATIONAL SAFETY &
HEALTH REVIEW COMMISSION;
Alexis M. Herman, United States Secretary of Labor, Respondents.

No. 97–3427.

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1998.

Decided Nov. 16, 1998.*

Ordered Published Feb. 1, 1999.

---

* This decision was originally issued as an "unpublished decision" filed on November 16, 1998. On January 21, 1999, the court designated the opinion as one recommended for full-text publication.

Keith A. Ashmus (argued and briefed), Heather L. Areklett (briefed), Thompson, Hine & Flory, Cleveland, Ohio, for Petitioner.

Ann Rosenthal (briefed), John Shortall (argued and briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Respondents.

Ray Darling, Secretary, Washington, D.C., for The Occupational Safety & Health Review Commission.

Before: BATCHELDER, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

This is an appeal from an Administrative Law Judge's ruling affirming the issuance of

a $1,500 citation against R.P. Carbone Construction Co. ("RPC"), a general contractor. The citation was issued by the Secretary of Labor under the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. § 651–678 (1994), charging that RPC failed to comply with worker-safety requirements. Because the ALJ's ruling is supported by substantial evidence and is not arbitrary or capricious, we **AFFIRM**.

## I. BACKGROUND

RPC was hired to construct the Luke Easter Recreation Center for use as an indoor skating rink, basketball facility, and jogging track in Cleveland, Ohio. Construction of the facility began in May of 1995. RPC hired CommSteel, a subcontractor, to perform the steel erection work. The subcontract required CommSteel to furnish all labor, materials, equipment, and work supervision necessary to complete the work, and to comply with all safety measures and applicable laws, rules, and regulations, including standards of the Occupational Health and Safety Administration ("OSHA").

On July 24, 1996, an OSHA inspector examined the RPC site in response to a safety-violation complaint. He observed two CommSteel ironworkers installing bridging and small pieces of steel without having hooked their safety belts into safety lines, and without using nets, catch platforms, or any other fall-protection equipment, as is required by the Act for workers operating more than 25 feet above the ground. The two CommSteel workers were positioned near the highest part of the structure, approximately 42 feet above the ground. Other workers also operated without fall-protection, but were working at heights lower than 25 feet above the ground. The inspector testified that he spoke with the two CommSteel workers, who said that they had been installing bridging, connecting beams, and moving around the structure for two weeks. Both the workers and CommSteel's safety manager told the inspector that they were under the impression that these activities were exempt from the Act's fall-protection requirements.

RPC's sole employee at the site was Rosario Carbone, the Project Superintendent. He had held this position for fifteen years, coordinating subcontractors, labor, and materials. Because he was unfamiliar with fall-protection procedures and the OSHA regulations for steel erection, he relied on CommSteel to comply with such requirements. Although he looked at the minutes from CommSteel's weekly safety meetings, he never actually read CommSteel's safety program. Further, he remained in his trailer for most of the workday. He walked around the site once or twice daily to make sure that the vertical rebars were capped, that there were no tripping or fire hazards, and that all ladders were stable. Each walk lasted from five minutes to one hour. Rosario Carbone also spoke with CommSteel's safety director, Bruce Demarco, who assured him that CommSteel had a fall-protection program requiring use of the proper safety equipment. He testified that he never saw workers without fall-safety protection.

Carmen Carbone, RPC's project manager, visited the site once a week for the purpose of overseeing the manpower, equipment, safety operations, and yard operations of the project. Carmen Carbone testified that he had seen workers using fall-protection equipment. He stated that he assumed CommSteel had a safety program because such was mentioned in the minutes from CommSteel's safety meetings.

Based on the OSHA inspector's findings, the Secretary of Labor issued a $1,500 penalty on the ground that RPC had not complied with the OSHA safety requirements outlined in 29 C.F.R. § 1926.105(a). The ALJ affirmed the citation and penalty, holding RPC liable as a general contractor because it could have reasonably detected and corrected the violation. The ALJ relied on the inspector's testimony and the fact that CommSteel's safety program did not require its workers to "tie-off" at all times when more than 25 feet above the ground. The ALJ also explained that the inspector's hearsay testimony of what he was told by CommSteel workers was not contradicted by Rosario Carbone's testimony that he had never seen any fall-protection violations. The ALJ explained: "The

record fails to show that [RPC] apprised itself of [CommSteel's] fall-protection program; if [RPC] had done so, it would have discovered that [CommSteel] was not intending to use fall protection while engaged in the activities later observed during the inspection."

RPC petitioned for review of the ALJ's report by the full Occupational Safety and Health Review Commission ("the Commission"). Because no member of the Commission requested review within thirty days, the ALJ's report became final on March 4, 1997. RPC now claims that the ALJ's decision is not supported by substantial evidence and is arbitrary and capricious.

## II. ANALYSIS

### A. Standard of Review

The ALJ's determination may be set aside if arbitrary, capricious, an abuse of discretion, or contrary to law. *National Engineering & Contracting Co. v. Occupational Safety & Health Admin.*, 928 F.2d 762, 767 (6th Cir.1991) (citing the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(a)). Under this standard, the court must consider whether there has been a clear error in judgment. *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). The ALJ's factual determinations must be affirmed if they are supported by substantial evidence on the record considered as a whole. *See id.* (citing the APA, 5 U.S.C. § 706). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. It is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached. *National Labor Relations Board v. Taylor Machine Products, Inc.*, 136 F.3d 507, 514 (6th Cir.1998).

An employer is liable for violating an OSHA safety standard if the Secretary of Labor can show the following by a preponderance of the evidence: (1) the standard applies to the cited conditions, (2) the requirements of the standard were not met, (3) employees had access to the hazardous condition, and (4) the employer knew or should

have known of the hazardous condition with the exercise of reasonable diligence. *See Carlisle Equipment Co. v. Secretary of Labor*, 24 F.3d 790, 792 (6th Cir.1994); 29 U.S.C. § 654(a)(2) ("Each employer ... shall comply with occupational safety and health standards promulgated under this chapter.").

### B. RPC's Liability as a General Contractor

The safety requirement allegedly violated, 29 C.F.R. § 1926.105(a), provides as follows:

(a) Safety nets shall be provided when workplaces are more than 25 feet above the ground ... or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

The Commission has held that when the other listed protective devices are used, a safety net is not required. *RGM Construction Co.*, 17 BNA OSHC 1229 (No. 91–2107, 1995), 1995 WL 242609, *2 (O.S.H.R.C.).

The only issue on appeal is whether RPC should have detected the violation through reasonable diligence. There is a presumption that a general contractor has sufficient control over its subcontractors to require them to comply with safety standards. *Secretary of Labor v. Gil Haugan*, 1979 WL 8537, *2 (O.S.H.R.C.). Thus, a general contractor is liable for violations it should reasonably have detected and abated, even when its own workers were not exposed to the violations. *Secretary of Labor v. Knutson Construction Co.*, 1976 WL 6122, *3 (O.S.H.R.C.).

The ALJ made two key findings to support his conclusion that RPC could have and should have apprised itself of the violation through reasonable diligence: (1) that the workers failed to use the required safety equipment for two weeks, and (2) that the violations occurred in plain view. RPC argues that the ALJ's conclusion is not supported by substantial evidence.

#### 1. Length of Time of Violation

There is substantial evidence to support the ALJ's conclusion that the workers operated without tying-off their safety belts

for two weeks (July 10, 1996 through July 24, 1996). The ALJ relied on hearsay testimony offered by the inspector to the effect that the workers said they were unaware that they were required to be tied-off when doing bridging work, and that they were doing such work for two weeks. RPC maintains, without any supporting evidence, that the violation lasted for no more than fifteen minutes.

RPC cites *Secretary of Labor v. Novak and Company*, 11 BNA OSHC 1783 (No. 80–2946–s, 1984), 1984 WL 34796, at *2 (O.S.H.R.C.), for the proposition that hearsay testimony is inadmissible to establish knowledge that the employees were not using fall protection. In *Novak*, however, the Commission simply chose to rely on direct testimony rather than less reliable and conflicting hearsay evidence. In fact, relevant and material hearsay may constitute substantial evidence. *See Bobo v. United States Dept. of Agriculture*, 52 F.3d 1406, 1414 (6th Cir.1995).

Deciding whether hearsay testimony constitutes substantial evidence in an agency decision requires consideration of several factors outlined in *Richardson v. Perales*, 402 U.S. 389, 402–06, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). These factors are as follows: (1) the independence or possible bias of the declarant, (2) the type of hearsay material submitted, (3) whether the statements are signed and sworn to as opposed to anonymous, oral, or unsworn, (4) whether the statements are contradicted by direct testimony, (5) whether the declarant is available to testify and, if so, (6) whether the party objecting to the hearsay statements subpoenas the declarant, or whether the declarant is unavailable and no other evidence is available, (7) the credibility of the declarant if a witness, or of the witness testifying to the hearsay, and finally, (8) whether the hearsay is corroborated. *See Calhoun v. Bailar*, 626 F.2d 145, 149 (9th Cir.1980) (citing *Richardson v. Perales*, 402 U.S. 389, 402–07, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Myers v. Secretary of HHS*, 893 F.2d 840, 845 (6th Cir.1990)(holding that the multi-factor test applies to agency decisions).

The statements of the two workers corroborated each other, and each were corroborated by the statement made by CommSteel's safety manager to the effect that they did not know they had to use the safety equipment while engaged in point-to-point activities. The inference drawn by the ALJ that the violation was a continuing one is also supported by the fact that a complaint had been filed alleging that the workers were in violation of fall-protection requirements for a significant period of time. Therefore, the ALJ properly considered the OSHA inspector's hearsay testimony. When viewed in light of the above factors, the ALJ's conclusion that the violation occurred for two weeks is supported by more than a scintilla of evidence.

### 2. Plain View

Further, there is substantial evidence that the violations occurred in plain view. This is shown by the fact that the inspector was able to videotape the violations from the ground. Rosario Carbone was obligated to see what was there to be seen. Assuming that he walked around the site once or twice every day, he should have observed the unprotected workers during the two weeks they had been on the steel structure without being tied-off.

### C. Right to Rely on CommSteel for Compliance

RPC argues that it had the right to rely on the subcontractor's compliance efforts in fulfilling RPC's duty to act with reasonable diligence to detect hazards. The ALJ found, however, that RPC had no right to rely on the expertise of CommSteel, because RPC failed to apprise itself of CommSteel's safety program. The ALJ explained that had RPC read CommSteel's safety program, RPC would have realized that CommSteel's program was not in compliance with OSHA's fall-protection requirements.

A general contractor may rely on the expertise of a subcontractor, unless the general contractor has reason to believe that the work is not being performed safely. *See Secretary of Labor v. Sasser Electric Mfg.*

*Co.*, 1984 WL 34886, *3 (O.S.H.R.C.). A general contractor need not duplicate the subcontractor's safety efforts, and need not know every minute detail of the subcontractor's safety efforts, but it must apprise itself as to what safety efforts the subcontractor has made. *See Secretary of Labor v. Blount International Ltd.*, 1992 WL 277011, at *7 n. 3 (O.S.H.R.C.).

RPC relies heavily on *Secretary of Labor v. Summit Contractors, Inc.*, 1996 WL 360816 (O.S.H.R.C.), and *Sasser Electric Mfg. Co.*, 1984 WL 34886, at *3 (O.S.H.R.C.), in support of its position that it properly relied on CommSteel's compliance efforts. In *Summit*, the subcontractor failed to set up guardrails or other fall protection around an open elevator shaft on the fourth floor of a building. The Commission held that the general contractor reasonably relied on the safety efforts of its subcontractor to comply with fall-protection requirements. *Summit*, 1996 WL 360816, at *6. The decision was based on the following facts: (1) the elevator openings on other floors were guarded, (2) the subcontractor's crew leader had fall-protection training, (3) the general contractor was not told of the violation, (4) the subcontract required the subcontractor to comply with safety requirements, (5) the general contractor walked the site daily, (6) the condition existed for no more than one day before its discovery, (7) although the condition was in plain view, it could not be seen from other floors or other parts of the project, and (8) the general contractor had hired a consultant to provide fall-protection training to the subcontractor's employees. *Id.* at *5–7.

The following facts in the present case distinguish it from *Summit:* (1) there is evidence that the CommSteel workers were without fall protection for a significant amount of time—two weeks, (2) as noted by the ALJ, the violations occurred in plain view and could be seen from all around the work site, (3) RPC presented no evidence that the subcontractor already had fall-protection training, and (4) RPC took no steps to ensure that the subcontractor would receive such training.

In *Sasser*, a crane operator accidentally swung the boom of the crane into nearby power lines. The Commission held that the general contractor had reasonably relied on the safety efforts of the crane company with which it subcontracted, because: (1) the cited hazard dealt with the operation of a crane and fell within the expertise of the subcontractor, (2) the subcontractor had exclusive control over the hazard, (3) the general contractor had warned the subcontractor of the closeness of the power lines, and (4) considering that the subcontractor had performed the same work previously without incident, there was no reason for the general contractor to have foreseen that the crane operator would have swung the boom into the power lines. *Sasser*, 1984 WL 34886, at *3.

The instant case is also distinguishable from *Sasser*, primarily because the violation here persisted for two weeks, it was not a sudden occurrence, and it was far more under the control of the general contractor. This is not comparable to an unforeseeable incident that happened without warning, as was the case is *Sasser*.

We therefore hold that there is substantial evidence to support the ALJ's conclusion that RPC should have detected the safety violation, and that RPC's reliance on CommSteel's safety efforts was unjustified because RPC failed to inform itself as to what safety measures CommSteel had implemented.

### III. CONCLUSION

This court's function is not to re-weigh the evidence, but simply to determine if substantial evidence supports the ALJ's decision. Notwithstanding any evidence to the contrary, we find that substantial evidence supports the ALJ's holding that RPC failed to take reasonable steps to detect and prevent a safety hazard. For the reasons stated above, we therefore **AFFIRM** the ALJ's ruling.