*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0366P (6th Cir.)
File Name: 02a0366p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HERITAGE BROADCASTING
COMPANY OF MICHIGAN,
           *Petitioner/*
       *Cross-Respondent,*

Nos. 01-1003/1209

*v.*

NATIONAL LABOR RELATIONS
BOARD,
           *Respondent/*
       *Cross-Petitioner.*

On Petition for Review and Cross-Application for
Enforcement of an Order of the
National Labor Relations Board.
No. 7-CA-43206.

Argued: September 19, 2002

Decided and Filed: October 18, 2002

Before: KENNEDY and MOORE, Circuit Judges; DOWD,
District Judge.[*]

---

[*]The Honorable David D. Dowd, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Dennis M. Devaney, WAYNE STATE UNIVERSITY LAW SCHOOL, Detroit, Michigan, for Petitioner.   Christopher Young, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. **ON BRIEF:** Gayle L. Landrum, Robert E. Day, Edward V. Keelean, WILLIAMS, MULLEN, CLARK & DOBBINS, Detroit, Michigan, for Petitioner. Christopher Young, Aileen A. Armstrong, Margaret Ann Gaines,  NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

_____

**OPINION**

_____

KENNEDY, Circuit Judge.  Petitioner/Cross-Respondent Heritage Broadcasting Company of Michigan (Heritage Broadcasting) seeks review of an order of the National Labor Relations Board (NLRB or Board) directing it to bargain in good faith with the National Association of Broadcast Employees and Technicians-Communication Workers of America, AFL-CIO (NABET). The NLRB found that Heritage Broadcasting violated sections 8(a)(1) and (a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), (a)(5), when Heritage Broadcasting refused to bargain with NABET after the union had been certified as the representative of bargaining unit employees. Heritage Broadcasting challenges NABET's certification on the grounds that the NLRB should have rejected NABET's challenge to four news producer ballots cast in the decertification election.[1]  Respondent/Cross-

_____

[1] Because NLRB representation proceedings are not directly reviewable by this Court, an employer who wants to challenge the fairness of an election must refuse to bargain with the certified union and then

employees sufficient to justify their inclusion in the unit as an initial certification matter, not whether they were actually in the unit for the purposes of a decertification election. We, therefore, conclude, after taking into account Petitioner's contradictory evidence, that the NLRB's determination was reasonably based on substantial evidence.

### III.

For the foregoing reasons, the NLRB's cross-application to enforce its order is granted.

Petitioner NLRB seeks enforcement of its order. For the reasons set forth below, we grant the NLRB's cross-application for enforcement of its order.

### I.

Heritage Broadcasting is a television broadcasting company that operates several television stations in Michigan. NABET has represented a bargaining unit comprised of Heritage Broadcasting employees who are "full-time and regular part-time news persons, engineers, technicians, director switchers, camera persons, artists, production employees, film employees, film editors, film photographers, and all persons who regularly appear on camera and on microphone" since 1989. The most recent collective bargaining agreement between Heritage Broadcasting and NABET covered the period from October 5, 1998 through December 31, 1999.

On January 3, 2000, a Heritage Broadcasting employee filed a petition to decertify NABET as the representative of bargaining unit employees. On February 10, 2000, the NLRB conducted a secret ballot election. The ballot tally indicated twenty-six votes in favor of continued NABET representation and twenty-three votes against continued representation. The ballots cast by Allison Mendoza, Ryan Delaney, Mike Nitzky, and Emily Henrikson were challenged by NABET on the grounds that these employees, who are employed as news producers, were not part of the bargaining unit and, therefore, ineligible to vote in the decertification election. Because the four challenged ballots were sufficient to determine the outcome of the election, the NLRB Regional Director conducted an investigation and, after determinating that the ballot challenges raised substantial and material factual issues, ordered a hearing.

---

raise the validity of the election in the ensuing unfair labor practices proceeding. *NLRB v. Duriron Co., Inc.*, 978 F.2d 254, 256 n.1 (6th Cir. 1992).

NLRB Hearing Officer Good held a hearing on March 6, 2000 to take evidence concerning the four challenged ballots. After the hearing, Hearing Officer Good issued a report that recommended that the challenges be sustained and that the ballots remain uncounted. In brief, Hearing Officer Good concluded that the bargaining unit definition was ambiguous as to whether the news producers were included in the bargaining unit and then determined that the news producers were not included in the bargaining unit for purposes of a decertification election based on evidence of the parties' past practices. Heritage Broadcasting filed exceptions to the Hearing Officer's report. On June 21, 2000, the Board denied Heritage Broadcasting's exceptions and certified NABET as the unit employees' exclusive collective bargaining representative.

Heritage Broadcasting has since refused to bargain with NABET. On July 18, 2000, in response to an unfair labor practices claim filed by NABET, the NLRB General Counsel issued a complaint alleging that Heritage Broadcasting's refusal to bargain violated sections 8(a)(1) and (a)(5) of the NLRA. Heritage Broadcasting's answer alleged in turn that the NLRB had erred in certifying the union. On August 18, 2000, the General Counsel filed a motion for summary judgment, which the NLRB granted on September 20, 2000. The Board's order requires Heritage Broadcasting to bargain with NABET upon request.

## II.

As an initial matter, the parties contest the standard of review that applies in this case. Petitioner argues that this Court should review the collective bargaining agreement (CBA) *de novo* because the issue of whether the bargaining unit definition is ambiguous presents a question of law. The Respondent argues that unless the NLRB's interpretation of the CBA was arbitrary, unreasonable, or an abuse of discretion, this Court should defer to that interpretation because it was reached in the context of determining voter

employees had consistently policed the CBA ban on news producers performing technical editing work, and Kevin Dunaway, Assistant News Director, testified that news producers were prohibited performing unit work under the CBA.

The record evidence that the Petitioner identifies as contradicting or establishing a "mixed past practice" does not diminish the substantial character of the record evidence relied upon by the Board. Heritage Broadcasting argues that the four challenged news producers cannot be excluded from the bargaining unit if Terri Steenhagen is included in the unit. Petitioner identifies Ms. Steenhagen as a "news producer" but did not call her to testify or produce any evidence describing her job duties. There is scant record evidence establishing that Ms. Steenhagen's job duties are identical to those of the challenged news producers. Ms. Steenhagen's personal service contract identifies her as an "Associate Producer/Writer/Editor, whereas News Producer Nitzky's contract identifies him as "Producer/Editor/Writer," News Producer Mendoza's contract identifies her as an "Associate Producer/Writer/Editor," News Producer Henrikson's contract identifies her as a "Producer," and News Producer Delaney's contract identifies him as "Supervising Producer." From the record evidence, we know that News Producers Delaney, Mendoza, and Henrikson perform similar job duties despite their differing titles and, therefore, we decline to assume that job titles are determinative of job duties. Consequently, it would be anomalous for us to conclude, absent specific evidence to the contrary, that News Producer Mendoza and Ms. Steenhagen perform the same job duties simply because they share the same job title.

As stated above, the balance of the Petitioner's evidence of "mixed past practices," such as how the news producer position has evolved over time and its historical relationship to bargaining unit employees and duties, as well as salary and tenure data, are relevant to the question of whether news producers have a community of interest with bargaining unit

challenged news producers believed that they were bargaining unit employees.

The personal service contracts offered by Heritage Broadcasting and its record of complying with the CBA union security provision substantiate the news producers' testimony. While the personal service contracts negotiated with all but one bargaining unit employee refer to the availability of a union grievance procedure, the personal service contracts negotiated with the challenged news producers do not include such a reference.[2] In regards to the CBA union security provision, which requires Heritage Broadcasting to give NABET notice of new bargaining unit hires, William Kring, Station Manager and Chief Financial Officer, testified that he never gave notice that the challenged news producers were bargaining unit hires, and Thomas Mueller, local union treasurer, testified that the union never attempted to require the news producers join the union. Thus, from a contractual perspective, Heritage Broadcasting and NABET acted as though the challenged news producers were excluded from the bargaining unit.

The day-to-day practices of the parties also support the news producers' understanding of their exclusion from the bargaining unit. News Producers Mendoza and Delaney testified that they each understood that they were prohibited from doing any technical editing work because that work was reserved for bargaining unit employees. (Again, Heritage Broadcasting stipulated that News Producer Nitzky's testimony would be the same.) In corroboration, Thomas Mueller, the local union treasurer and a 24-year station employee, and Edwin Peterson, the local union president and a 38-year station employee, testified that bargaining unit

---

[2]News Producer Delaney's personal service contract includes a reference to the union grievance procedure. While this contract is part of the record evidence, we have not assigned it any weight as it was prepared subsequent to the filing of the NLRB petition and was never signed by the parties.

eligibility in a representation proceeding. We agree with the Respondent. Because the NLRA vests authority in the NLRB to determine the appropriate bargaining unit for decertification elections, *NLRB v. Hollaender Mfg. Co.*, 942 F.2d 321, 326 (6th Cir. 1991) (citing 29 U.S.C. § 159(b)), this Court will defer to the Board's determination unless it is arbitrary, unreasonable, or an abuse of discretion, *Armco, Inc. v. NLRB*, 832 F.2d 357, 362 (6th Cir. 1987); *Saints Mary & Elizabeth Hosp. v. NLRB*, 808 F.2d 1211, 1212 (6th Cir. 1987); *NLRB v. Hardy-Herpolsheimer Div. of Allied Stores of Mich., Inc.*, 453 F.2d 877, 878 (6th Cir. 1972). Further, we treat the NLRB's findings of fact as conclusive if supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e), (f) (1998). In reviewing the NLRB's fact-finding, we examine whether the Board considered "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached," *NLRB v. Seawin, Inc.*, 248 F.3d 551, 554-55 (6th Cir. 2001) (quoting *R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n*, 166 F.3d 815, 818 (6th Cir. 1998)), taking into account contradictory evidence and evidence that suggests conflicting inferences, *TNS, Inc. v. NLRB*, 296 F.3d 384, 394-95 (6th Cir. 2002).

Contrary to Petitioner's contention, the NLRB's conclusion that the bargaining unit definition is ambiguous is reasonable. As discussed in Hearing Officer Good's report, the bargaining unit definition and its relationship to other CBA provisions supports arguments "both in favor and opposed to the inclusion of news producers in the bargaining unit." First, the definition does not expressly mention "news producers"; rather, the definition includes "production employees" while it excludes, among others, "producer-directors" and "supervisors as defined by the Act." Consequently, news producers could be included in the bargaining unit if they are classified as production employees, or news producers could be excluded from the unit if they are classified either as producer-directors or as supervisors. Second, the news producer job description included in the CBA does not define

the specific job duties that dictate the inclusion of news producers in the bargaining unit; rather the job description focuses on what duties result in a news producer "evolv[ing] out of the unit." Specifically, the job description provides that if a news producer ceases to perform anything more than *de minimis* technical editing duties and the news producer performs some, but not all, of the duties delineated in the job description, or the news producer functions in a supervisory capacity, then the news producer is excluded from the bargaining unit. Again, a news producer may be included in the unit if the producer performs more than *de minimis* technical editing duties or a news producer may be excluded from the unit if the producer performs certain other duties and performs only *de minimis* technical editing duties. And third, Schedule A, which lists bargaining unit employee wage scales by job description title, does not mention news producers, suggesting that news producers are not included in the bargaining unit. Because we agree with the NLRB's determination that the CBA bargaining unit definition is ambiguous, we next consider whether the NLRB was reasonable in basing its determination on evidence of the parties' past practices.

Petitioner argues that community of interest considerations, as opposed to extrinsic evidence of the parties' past practices, should have predominated the NLRB's interpretation of the bargaining unit definition, and that the record evidence considered by the NLRB merely shows a "mixed past practice" that fails to support the Board's determination that the four challenged news producers are excluded from the bargaining unit. Petitioner's argument conflates the issue of what constitutes an appropriate bargaining unit for the purposes of initial union certification with what constitutes an appropriate bargaining unit for the purposes of a decertification election. As a result, Heritage Broadcasting misdirects the thrust of its argument to evidence establishing a community of interest between news producers and bargaining unit employees. This Court has previously held that the appropriate bargaining unit for the purposes of a

decertification election is the certified unit—in other words, the bargaining unit that the parties actually created through the CBA, as opposed to the unit that the parties could have created consistent with national labor policy. *Hollaender Mfg.*, 942 F.2d at 326; *Saints Mary & Elizabeth*, 808 F.2d at 1212; *accord Brom Machine & Foundry Co. v. NRLB*, 569 F.2d 1042, 1044 (8th Cir. 1978) (holding that the bargaining unit for decertification proceeding can be no larger than the one recognized in the last collective bargaining agreement). In light of this distinction, when the NLRB determines the appropriate bargaining unit for a decertification election, it considers extrinsic evidence of the parties' past practices in implementing the CBA and, thereby, limits the bargaining unit to those employees who have actually been represented by the union. *Booth Broadcasting Co.*, 134 NLRB 817, 822 (1961). In contrast, when the NLRB determines the appropriate bargaining unit for initial certification purposes, it considers whether the contested employees share a community of interest with other bargaining unit employees to justify their common representation. *Armco*, 832 F.2d at 362. Thus, as in this case, where employee eligibility to vote in a decertification election turns on whether the challenged employee was a part of the existing bargaining unit, the NLRB reasonably rejected community of interest evidence as irrelevant and limited its analysis to the past practices of the parties.

There is substantial record evidence regarding the parties' past practices to support the NLRB's determination that Heritage Broadcasting and NABET operated under the belief that the challenged news producers were excluded from the bargaining unit. News Producers Mendoza and Delaney testified that, at the time each was hired, News Director and Operations Manager John Michael Carter told each of them that their jobs were not union positions. News Producer Henrikson testified that she too believed that her job was not a union position. Heritage Broadcasting stipulated that News Producer Nitzky's testimony would be consistent with that of Mendoza, Delaney, and Henrikson. Thus, none of the four