NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0225n.06
Filed: March 29, 2005

No. 03-4456

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| COMPLETE GENERAL CONSTRUCTION CO., | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | On Petition for Review of an Order |
| | ) | of the Occupational Safety and |
| OCCUPATIONAL SAFETY & HEALTH REVIEW | ) | Health Review Commission |
| COMMISSION; SECRETARY OF LABOR, | ) | |
| | ) | |
| *Respondents.* | ) | |

**Before:** **BOGGS, Chief Judge; COOK, Circuit Judge; and BEER, District Judge.***

**PER CURIAM.** Complete General Construction Co. petitions for review of an order of the Occupational Safety & Health Review Commission fining it for inadequately protecting a trench. Because there is substantial evidence to support the Administrative Law Judge's conclusion that the company failed to adequately communicate its safety rules to its employees and, thus, was not entitled to the affirmative defense of unpreventable employee misconduct, we deny the petition for review.

**I**

---

*The Honorable Peter H. Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

Complete General Construction Co. ("Complete General") is a general contractor that completed a storm drainage project for the City of Dublin, Ohio during the summer and fall of 2002. William Redoutey, who had been hired by the company in August of that year, was working as a foreman on the project. On the morning of September 20, 2002, the crew was installing a storm pipeline by the side of a street in Dublin. To do so, they had dug a trench, which they were attempting to lengthen using an excavator. Another recently hired employee, Louis Royce Ford, entered the trench to work on some of the pipe that was already in place. While he was in the trench, the bucket of the excavator detached and struck Ford on the head, causing serious injury.

A compliance officer from the Occupational Safety and Health Administration's ("OSHA") Columbus area office arrived at the work site to investigate the accident. Based on the officer's investigation, Complete General was issued two serious citations. The first citation, relating to the company's operation of the excavator, was withdrawn prior to the hearing. Though the second citation was not related to Ford's injury, Complete General was also cited for not having an adequate protective system in place at the trench to prevent cave-ins, in violation of the procedures set forth in 29 C.F.R. § 1926.652.[1]

---

[1] To prevent trenches from caving in, OSHA regulations establish procedures for how to protect trenches that are deeper than five feet and comprised not entirely of rock. § 1926.652(a). One common way to protect a trench is the use of a shield system: walls that are placed in the trench to prevent the trench from collapsing. *See* § 1926.652(c). Another common way, and the one used by Complete General in this instance, is to slope the walls of the trench to prevent cave-ins. *See* § 1926.652(b). The angles at which the trench's walls can be sloped depend primarily on the kind of soil around the trench. *See ibid.*

Complete General contested the violation, which led to a hearing before an Administrative Law Judge ("ALJ") on April 30, 2003. The company argued both that it had adequately sloped the trench and, in the alternative, that any deficiency was the fault of Redoutey, the company's foreman on the job. Thus, Complete General asserted, they were entitled to the affirmative defense of unpreventable employee misconduct. The ALJ decided that Complete General had failed to sufficiently slope the trench. She also rejected the company's affirmative defense because it had failed to adequately communicate its safety rules to its workers. Having affirmed the citation, the ALJ assessed a fine of $2,500.

Complete General filed for discretionary review with the Occupational Safety & Health Review Commission, which denied the request on September 11, 2003. It now petitions this court to review the ALJ's denial of its affirmative defense of unpreventable employee misconduct.

## II

Because the Commission declined to review the ALJ's decision, we review her decision as the Commission's final order. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 148 (1991) ("Initial decisions are made by an administrative law judge (ALJ), whose ruling becomes the order of the Commission unless the Commission grants discretionary review."). We review the Commission's findings of fact to determine if they are supported by substantial evidence. *CMC Elec., Inc. v. OSHA*, 221 F.3d 861, 865 (6th Cir. 2000) (citing 29 U.S.C. § 660(a) ("The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.")). This standard is highly

deferential. *Danis-Shook Joint Venture XXV v. Sec'y of Labor*, 319 F.3d 805, 809 (6th Cir. 2003).

We have described substantial evidence, in this context, as "more than a scintilla, but less than a

preponderance, of the evidence. It is such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion reached." *R.P. Carbone Constr. Co. v. Occupational Safety &

Health Review Comm'n*, 166 F.3d 815, 818 (6th Cir. 1998).

To make out a defense of unpreventable employee misconduct, "an employer must show that

it has a thorough safety program, it has communicated and fully enforced the program, the conduct

of the employee was unforeseeable, and the safety program was effective in theory and practice."

*Danis-Shook*, 319 F.3d at 812 (citing *CMC Elec.*, 221 F.3d at 866). Highly relevant in evaluating

claims of unpreventable employee misconduct is the performance of supervisors and foremen. As

this court has stated on more than one occasion, "'negligent behavior by a supervisor or foreman[,]

which results in dangerous risks to employees under his or her supervision, . . . raises an inference

of lax enforcement and/or communication of the employer's safety policy.'" *Id.* at 811 (quoting

*Brock v. L.E. Myers Co., High Voltage Div.*, 818 F.2d 1270, 1277 (6th Cir.), *cert. denied*, 484 U.S.

989 (1987)).

In this case, the ALJ found that Complete General was not entitled to the defense of

unpreventable employee misconduct because it had failed to adequately communicate its rules

concerning trenching to its employees. This is a factual finding that we review for substantial

evidence. *See CMC Elec.*, 221 F.3d at 866 ("We conclude that under these circumstances *there is

substantial evidence* . . . that CMC did not adequately train its employees to recognize the relevant

hazards or applicable regulations.") (emphasis added); *George J. Igel & Co. v. Occupational Safety*

No. 03-4456
Complete General v. Commissioner

*& Health Review Comm'n*, No. 01-3540, 50 Fed. Appx. 707, 714 (6th Cir. Oct. 30, 2002) (unpublished opinion); *cf. Brock*, 818 F.2d 1277-78 (treating issue of unpreventable employee misconduct as factual issue after having resolved circuit's approach to issue). Upon review of the record, we believe that sufficient evidence exists for a reasonable mind to accept the conclusion that Complete General failed to adequately communicate its safety rules concerning trenching to its employees. *See R.P. Carbone Constr.*, 166 F.3d at 818.

Complete General communicated its safety rules to its foremen through multiple means: a comprehensive safety manual, weekly "toolbox talks," and an annual safety class given to all supervisors. Despite these forms of communication, there remains substantial evidence that the company failed to adequately communicate its safety rules, especially to recently hired foremen such as Redoutey. Trenching and excavation are central activities at Complete General. The rules governing it are relatively complicated and, as such, they are thoroughly explained in the company's safety manual. However, while each employee signed a waiver indicating that he received the manual and had a responsibility to read it, Complete General made no effort to insure that its employees actually did read and understand its contents, including the detailed rules on trenching. Redoutey's personal experience is instructive on this point. Redoutey stated that he was given a short time to review the safety manual. He then returned to a manager's office and signed the waiver. A reasonable mind might well accept that merely having an individual sign a form acknowledging his responsibility to read the safety manual is insufficient to insure that the detailed instructions contained therein have actually been communicated.

Complete General's failure to insure employees read the safety manual would not defeat its assertion of the unpreventable employee misconduct defense were it to effectively communicate the trenching rules through other means. The company's weekly "toolbox talks" and supervisors' safety class failed, however, to effectively communicate safety rules. The "toolbox talks" suffered from two critical defects. First, the ALJ credited Ford's testimony that these meetings did not focus on the transmittal of safety information, but instead were an opportunity to recount the week's events, plan for next week, and distribute the employees' paychecks. Second, trench safety was not the central topic of any "toolbox talk" during Redoutey's tenure at the company. Trenching and excavation was only mentioned once, as part of a "top ten" list of standards cited by OSHA. The sheet merely stated the relevant Code of Federal Regulations section and the general purpose of the regulation, that employees "be protected from cave-ins by an adequate protective system." *See* 29 C.F.R. § 1926.652(a)(1). While Complete General's supervisor safety class dealt extensively with trenching, that class was only held annually. A newly hired foreman could then have a period of up to one year without adequate training. Thus, neither the "toolbox talks" nor the supervisors' safety class adequately conveyed Complete General's safety rules regarding trenching and excavating to the company's employees, especially newly hired foremen such as Redoutey.

The fact that Redoutey, due to his prior work experience, may have known the rules regarding trenching is insufficient to rebut the evidence that Complete General failed to adequately communicate its own safety rules to its own employees. As the Commission has acknowledged previously, an employee's knowledge gained from previous work experience is not necessarily determinative of whether the company adequately communicated its precautionary measures. *See*

*Halmar Corp.*, 18 O.S.H. Cas. (BNA) 1014, 1018, 1997 WL 594393 at \*5 (O.S.H.R.C. 1997) (finding inadequate communication despite an employee knowing the relevant rules when his knowledge stemmed from "past experience and training" and not his current employer). Redoutey's failure to properly slope the trench resulted in a "dangerous risk" to the employees working under him. *Danis-Shook*, 319 F.3d at 811 (quoting *Brock*, 818 F.2d at 1277). Because Redoutey was a foreman, his negligence raises an inference of lax communication. *Ibid.*

This inference of lax communication is further supported by Complete General's practices. Despite the safety manual's detailed rules on trenching, a reasonable mind might accept the ALJ's finding that Complete General did not adequately communicate its safety rules because the company did not take steps to insure the employees read and understood them. The company did not check that employees read the manual and did not effectively communicate its rules via alternative means. Therefore, the ALJ's conclusion that Complete General is not entitled to the defense of unpreventable employee misconduct is supported by substantial evidence. We accordingly affirm the Commission's order and deny the petition for review.