**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1247n.06

**No. 11-4242**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 05, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ALL ERECTION & CRANE RENTAL CORP., | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF A FINAL ORDER OF THE |
| | ) | OCCUPATIONAL SAFETY & |
| v. | ) | H E A L T H   R E V I E W |
| | ) | COMMISSION |
| OCCUPATIONAL SAFETY AND HEALTH | ) | |
| REVIEW COMMISSION, | ) | OPINION |
| | ) | |
| HILDA L. SOLIS, U.S. SECRETARY OF | ) | |
| LABOR, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: McKEAGUE, GRIFFIN, Circuit Judges, and DLOTT, Chief District Judge.[*]

**McKeague, Circuit Judge.** This case arises out of a company's failure to comply with federal crane safety standards designed to ensure the safety and well-being of employees who work within close proximity of an operating crane. All Erection & Crane Rental Corp. ("All Crane") petitions for review of a final order of the Occupational Safety and Health Review Commission (the "Commission") finding a violation of 29 C.F.R. § 1926.550(a)(9), which requires that the swing radius of the rear of a crane's rotating superstructure be barricaded. Because we conclude that

---

[*]The Honorable Susan J. Dlott, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

substantial evidence supports the Administrative Law Judge's ("ALJ") decision, and it is not arbitrary or capricious, we **DENY** the petition.

## I. BACKGROUND

All Crane is an Ohio corporation that sells and rents cranes and provides crane-related services to other companies. In September 2010, All Crane supplied a crane and two employees to a general contractor that was building a bridge in Brookpark, Ohio. On September 18, 2010, the bridge collapsed for reasons unrelated to the crane or its operation; consequently, personnel from the Occupational Safety and Health Administration ("OSHA") began investigating the construction site and the various companies involved in the project. While at the worksite, an OSHA compliance officer named Joko Vermillion noticed that the swing radius of the rear of the crane's superstructure was not barricaded, which constituted a violation of 29 C.F.R. § 1926.550(a)(9).[1]

On September 20, 2010, Vermillion spoke with Mike Garity, All Crane's sales representative. Garity identified Dean Feiler ("Feiler"), the crane's operator, and Dean Feiler, Jr., the crane's oiler, as All Crane employees who were working at the site. Vermillion subsequently requested to interview the two employees, which resulted in a meeting with Feiler. During the meeting, Feiler told Vermillion that he had barricaded a portion of the crane's swing radius by leaning two wooden pallets together. Because this structure does not qualify as a proper barricade,

---

[1]29 C.F.R. § 1926.550(a)(9) provides that "[a]ccessible areas within the swing radius of the rear of the rotating superstructure of the crane, either permanently or temporarily mounted, shall be barricaded in such a manner as to prevent an employee from being struck or crushed by the crane."

on February 17, 2011, Vermillion issued All Crane a citation for failing to properly barricade the crane's swing radius.

All Crane contested the citation, and a hearing was held before an ALJ on June 3, 2011. Vermillion, Feiler, and All Crane's safety director, Kirk Ward, testified. On August 4, 2011, the ALJ issued a decision affirming the citation. *See All Erection & Crane Rental Corp.*, 23 BNA OSHC 1923 (No. 11-0745, 2011). The ALJ began her analysis by addressing All Crane's challenge to Vermillion's credibility. *Id.* at *3. All Crane asserted that Vermillion was not a credible witness because he testified that the accident had occurred on September 17, 2010, rather than September 18, and because he mistakenly testified to taking some photographs introduced as evidence. *Id.* The ALJ stated that "[this] does not suggest that he is not credible, especially since he was testifying from memory and only used his investigation file to refresh his recollection." *Id.* Additionally, she found Vermillion to be "composed, sincere, and believable" and these discrepancies to be insignificant. *Id.*

After finding Vermillion credible, the ALJ addressed the alleged violation of 29 C.F.R § 1926.550(a)(9). She found that the first element necessary for imposing liability—whether the standard applies—was fulfilled, for the regulation specifically addressed cranes. *Id.* at *4. Regarding the second element—whether the standard's terms were met—the ALJ held that "[t]he record shows the crane's swing radius was not barricaded as required." *Id.* She cited Feiler's testimony, in which he admitted that he did not properly barricade the swing radius, and All Crane's brief, which, according to the ALJ, essentially conceded this point. *Id.*

The third element—whether employees were exposed to the cited condition—was also met. *Id.* In finding employee exposure, the ALJ cited Commission decisions for the proposition that this element is met if "it is reasonably predictable by operational necessity or otherwise, including inadvertence, that employees have been, are, or will be in the zone of danger." *Id.* (quotation omitted). Based on the testimony of Vermillion and Feiler, she found that the crane's oiler was within the crane's swing radius during its operation. *Id.* She also found that other employees were within the zone of danger because "employees walked behind and around the crane, in proximity to the rotating counterweight . . . . There was nothing to prevent the employees from accessing the area of the crane's swing radius." *Id.*

The fourth and final element—whether the employer had knowledge of the violation—was satisfied through Feiler's knowledge of the violation. *Id.* at *5. The ALJ cited Vermillion's testimony that Feiler identified himself as the foreman of the project and that he was in charge of the crane, the oiler, and the oiler's safety. *Id.* She noted that Feiler testified that he did not identify himself as a member of management or as a foreman. *Id.* However, she held that his control of the crane's operation and responsibility for the oiler, not his official position within the company, was dispositive. *Id.* In support, she cited *Tampa Shipyards, Inc.*, 15 BNA OSHC 1533 (Nos. 86-360, 86-469, 1992), for the proposition that "[a]n employee who has been delegated authority over another employee, even if only temporarily, is considered to be a supervisor for purposes of imputing knowledge to an employer." *Id.*

After holding that a prima facie violation had been established, the ALJ addressed All Crane's affirmative defense of unpreventable employee misconduct. *Id.* at *6. Though she found

that All Crane did have established work rules pertaining to crane barricading, she also found that All Crane did not effectively communicate these rules. *Id.* at *6-7. Therefore, she affirmed the citation, although she reduced the penalty from $4,500 to $2,500. *Id.* at *7. On September 15, 2011, the Review Commission declined to review the ALJ's decision, thus adopting the ALJ's decision as its final order.

## II. ANALYSIS

### A. Standard of Review

Our review of a Commission decision is limited. "The ALJ's determination may be set aside if arbitrary, capricious, an abuse of discretion, or contrary to law." *R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n*, 166 F.3d 815, 818 (6th Cir. 1998). We must accept as conclusive the ALJ's factual findings if "supported by substantial evidence on the record considered as a whole." *Id.* "Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence." *Id.*

### B. Violation

To establish a prima facie violation of an OSHA standard, the Secretary of Labor must show by a preponderance of the evidence that "(1) the standard applies to the cited conditions, (2) the requirements of the standard were not met, (3) employees had access to the hazardous condition, and (4) the employer knew or should have known of the hazardous condition with the exercise of reasonable diligence." *R.P. Carbone Constr. Co.*, 166 F.3d at 818. All Crane does not dispute that the first two elements were shown. It argues only that employees did not have access to a hazardous condition and that it did not know of the condition's existence.

*1. Access to the Hazardous Condition*

Although All Crane admits that there is no question that Feiler failed to comply with 29 C.F.R. § 1926.550(a)(9) because he only partially barricaded the crane's swing radius, it contends that the ALJ erred in finding that employees were exposed to a hazard. All Crane bases this argument on the alleged fact that only the right rear of the crane exposed employees to a hazard and that this area was blocked with pallets. All Crane asserts that because there were high voltage wires on the right side of the crane, the crane could not pivot to the right without striking the wires. Additionally, All Crane states that there was no reason for the crane to pivot to the right, because the only work that was performed was on the left side of the crane. Thus, because the crane was only pivoting left, the only existent hazard was on the right-rear side of the crane. All Crane further argues that Feiler denied that the oiler entered the swing radius during the crane's operation.

But the thrust of All Crane's argument is misdirected. The Secretary need only prove that employees had access to the violative condition. The Secretary need not prove that employees were actually exposed to the condition, but only that it was reasonably predictable that employees would be within the zone of danger. *See* Mark A. Rothstein, Occupational Safety and Health Law § 5:13 (2011 ed.). Furthermore, the Secretary need not prove that the violative condition was actually hazardous, since under a standard such as this the existence of a hazard is presumed. *See Mayflower Vehicle Sys., Inc. v. Chao*, 68 F. App'x 688, 692 (6th Cir. 2003); *Bunge Corp. v. Sec'y of Labor*, 638 F.2d 831, 834 (5th Cir. 1981).

Substantial evidence supports the ALJ's finding that employees had access to the violative condition, namely, the unbarricaded swing radius of the crane. The ALJ found that the oiler worked

within the swing radius of the crane while it operated. *All Erection & Crane Rental Corp.*, 23 BNA OSHC at *4. This finding is directly supported by Vermillion, who stated, "I asked [Feiler] if the oiler was working inside the swing radius while the crane was being operated, and he indicated to me that he had. He was in there to check the crane and at all times he was working all around the crane." Petitioner's App. Vol. I, Hearing Transcript, 38. Although All Crane points out that Feiler contradicted this testimony, the ALJ addressed this discrepancy and reasonably rejected Feiler's testimony on this point. *All Erection & Crane Rental Corp.*, 23 BNA OSHC at *4.

Additionally, it was reasonably predictable that other employees could have accessed the violative condition. The ALJ found that "[i]n order to enter the job site, employees walked behind and around the crane, in proximity to the rotating counterweight . . . . There was nothing to prevent the employees from accessing the area of the crane's swing radius. . . . [O]ther employees had access to the un-barricaded area of the crane's swing radius." *Id.* at *4. The ALJ's finding that employees had access to the unbarricaded swing radius is supported by substantial evidence.

*2. Knowledge of the Hazardous Condition*

All Crane's argument that it did not have knowledge of the hazardous condition is without merit. Feiler had actual knowledge of the violation. This Court has held that a supervisor's knowledge may be imputed to the employer. *Danis-Shook Joint Venture XXV v. Sec'y of Labor*, 319 F.3d 805, 812 (6th Cir. 2003). All Crane asserts that Feiler was not an official foreman or manager, and thus his knowledge of the violation cannot be imputed to All Crane. This assertion ignores the ALJ's rationale. The ALJ held that official status is not controlling. Instead, "[t]he fact that Feiler was in charge of the crane operations on the site, and as he stated, that he was responsible for the

safety of the oiler on the jobsite, is determinative." *All Erection & Crane Rental Corp.*, 23 BNA OSHC at *5.

In holding that Feiler was a supervisor for the purpose of imputing knowledge to All Crane, the ALJ correctly applied applicable law. *See Tampa Shipyards, Inc.*, 15 BNA OSHC 1533, at *6 (Nos. 86-360, 86-469, 1992) ("An employee who has been delegated authority over other employees, even if only temporarily, is considered to be a supervisor for the purposes of imputing knowledge to an employer."); *see also Georgia Elec. Co. v. Marshall*, 595 F.2d 309, 321 (5th Cir. 1979) (indicating that a "boom truck operator" who oversaw a crew erecting light poles "in fact exercised supervisory authority," even though his "job title was not that of a superintendent or foreman," and therefore his knowledge could be imputed to his employer). Moreover, regardless of Feiler's knowledge, the record indicates that All Crane failed to exercise reasonable diligence in monitoring the safety of its operations. Its safety supervisor, Kirk Ward, admitted that he never visited the worksite until after the bridge collapsed. Accordingly, All Crane should have known of the violative condition.

## C. Affirmative Defense

All Crane next argues that the ALJ erred in finding that it did not establish the affirmative defense of unpreventable employee misconduct. "In the Sixth Circuit, in order to successfully assert this defense, an employer must show that it has a thorough safety program, it has communicated and fully enforced the program, the conduct of the employee was unforeseeable, and the safety program was effective in theory and practice." *Danis-Shook Joint Venture XXV v. Sec'y of Labor*, 319 F.3d 805, 812 (6th Cir. 2003). The ALJ found that although All Crane had a written safety program that

was communicated to its employees, it did not *effectively* communicate this policy. *All Erection &*

*Crane Rental Corp.*, 23 BNA OSHC at *7. In relevant part, she stated:

> [Feiler was] unaware that the oiler was not permitted to work within the swing radius
> of the crane while the crane was operating. Feiler's statement to Vermillion that he
> believed there was an exemption for the oiler which permitted the oiler to work
> within the swing radius of the crane while the crane was operating, indicates Feiler's
> understanding of crane safety and All Crane's rules was not as extensive as All Crane
> claims . . . . Further, a supervisor's failure to follow the safety rules and involvement
> in the misconduct is strong evidence that the employer's safety program was lax.

*Id.*

All Crane argues that this finding was based on a mistake of law. All Crane contends that

29 C.F.R. § 1926.550(a)(9) pertains to barricading the swing radius of the rear of a crane, not to

prohibiting employees from working within the swing radius. Additionally, All Crane argues that

Feiler was correct in his belief that there is an exemption permitting oilers to work within a crane's

swing radius.

Though the parties devote much effort to disputing whether 29 C.F.R. § 1926.550(a)(9)

recognizes an exception that permits an oiler to enter the swing radius of a crane during its operation,

we need not resolve the dispute.[2] We agree with the ALJ that Feiler was effectively a supervisor

since he was given complete control and full responsibility over the crane's operations without any

oversight. This Court has previously stated that "[i]n cases involving negligent behavior by a

supervisor or foreman which results in dangerous risks to employees under his or her supervision,

---

[2]Shortly after the facts underlying this case transpired, OSHA completely revised its standards governing cranes and derricks. The new standard that governs barricading the swing radius is drastically different from the old standard. *See* 29 C.F.R. § 1926.1424.

such fact raises an inference of lax enforcement and/or communication of the employer's safety policy." *Danis-Shook Joint Venture XXV*, 319 F.3d at 811 (citation omitted); *see also Brock v. L.E. Myers Co., High Voltage Div.*, 818 F.2d 1270, 1277 (6th Cir. 1987).

Here, Feiler blatantly violated OSHA safety standards and All Crane's own company policies. *See* 29 C.F.R. § 1926.550(a)(9); Petitioner's App. Vol. II, All Crane's Safety Policy, 26. This fact supports the ALJ's finding that All Crane's work rules were not effectively communicated.

We find further evidence to support the ALJ's finding in Feiler's beliefs regarding the effectiveness of the wooden-pallet barricade. All Crane alleges that "[Feiler] believed in good faith that he had complied with the rule, because the struck-by hazard only existed on the right side of the crane." Petitioner's Br. 31. Indeed, when asked whether he believed that he effectively barricaded the crane's swing radius, Feiler responded affirmatively. This belief is incorrect and contrary to the plain language of the standard and indicates that All Crane's work rules were not effectively communicated.

Furthermore, evidence in the record indicates that Feiler's misconduct was foreseeable. Although the ALJ did not reach this element of the employee misconduct defense, we could affirm on this ground. *See Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010). All Crane admits that it had employees on site on September 1, 8, 9, 10, 13, 14, 15, and 17. During this period of over two weeks, no safety inspector from All Crane visited the site. We think that a reasonable employer would have sent a safety inspector to the site during this time. If All Crane had done so it would have discovered the violation, which was plainly visible. Therefore, All Crane cannot prove that Feiler's misconduct was unforeseeable.

**D. Miscellaneous Issues**

All Crane asserts that it was prejudiced by receiving redacted versions of the investigator's narrative and worksheet, for these redacted versions gave it the impression that the Secretary was taking the position that Feiler was neither a member of management nor a supervisor. All Crane also asserts that it was prejudiced by the ALJ's refusal to permit All Crane to enter the unredacted documents into evidence during the hearing.

Regardless of any error, All Crane has not demonstrated prejudice. "[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (citations and quotations omitted). Evidently the redacted information totaled around three lines. During the hearing, the ALJ took a fifteen-minute recess to allow counsel for both parties to review and discuss the unredacted documents. After this recess, she allowed All Crane's counsel to impeach Vermillion with the redacted information. Additionally, All Crane's counsel did not take issue with the ALJ's statement that this procedure eliminated any prejudice to All Crane. Moreover, All Crane's counsel acknowledged that Vermillion identified Feiler as a foreman in unredacted portions of the documents. Regardless of any error, All Crane was not prejudiced.

All Crane's argument that it was not afforded an opportunity to participate in the inspection is also without merit. All Crane clearly knew of the OSHA investigation and points to no facts indicating it was denied an opportunity to participate in the inspection.

### III.  CONCLUSION

For these reasons, we **DENY** the petition for review.