**TENNESSEE VALLEY AUTHORITY,**
Appellant,

v.

**UNITED STATES SECRETARY
OF LABOR, Appellee,**

**Curtis Overall, Intervenor.**

No. 01–3724.

United States Court of Appeals,
Sixth Circuit.

March 6, 2003.

Before GILMAN and GIBBONS,
Circuit Judges; and ECONOMUS,
District Judge.*

## OPINION

GIBBONS, Circuit Judge.

Curtis Overall filed a complaint with the United States Department of Labor (DOL), pursuant to the whistleblower provision of the Energy Reorganization Act (ERA), 42 U.S.C. § 5851, alleging that the Tennessee Valley Authority (TVA), his former employer, retaliated against him because he raised safety concerns at one of TVA's nuclear power plants. After an investigation, an evidentiary hearing, and two levels of review, the DOL found in

favor of Overall. TVA appeals the DOL's decision, claiming that the decision is not based on substantial evidence and is not in accordance with the law. For the following reasons, we affirm the DOL's decision.

## I.

Overall worked for TVA from 1979 until TVA terminated him in September 1996. In 1994, Overall was working at TVA's Watts Bar nuclear power plant, which was being constructed in East Tennessee between Chattanooga and Knoxville. Overall was the power plant specialist primarily responsible for managing the Watts Bar ice condenser system, which plays a critical safety role in protecting the plant and the public from radiation exposure in the event of an accident. Overall's immediate supervisor was Landy McCormick, who was supervised by Dennis Koehl.

In September 1994, TVA issued to Overall and eighteen other employees a written notification of "potential at-risk status," which informed Overall and the others that based on planning projections TVA "may assign you to the Services organization effective July 3, 1995." The Services organization is a division of TVA that retains displaced TVA employees and competes with outside contractors for project work at TVA. Despite the September 1994 notice. TVA consistently gave Overall positive performance reviews regarding his work on the ice condenser system, and, in March 1995, TVA awarded Overall "The Power of Excellence" award in recognition of his good work.

In April 1995, Overall discovered a screw failure with the ice condenser system, and, on April 21, 1995, he submitted a Problem Evaluation Report (PER 246)

---

* The Honorable Peter C. Economus, United States District Judge for the Northern District    of Ohio, sitting by designation.

with TVA. Overall also prepared a Corrective Action Plan (CAP) setting forth several actions required to investigate and resolve the problem identified in PER 246. Soon after submitting PER 246, Overall began to implement the CAP he had prepared.

As of April 1995, TVA had been constructing the Watts Bar nuclear power plant for over twenty years and planned to load nuclear fuel in the plant by November 1995. The submission of PER 246 and the implementation of the CAP threatened to delay further the schedule for initiating power generation at Watts Bar. According to Overall, TVA management, including Dennis Koehl, emphasized the importance of resolving PER 246 quickly and, in general, discouraged any actions that could further delay fuel loading. Pursuant to the CAP initiated by Overall, however, one of TVA's metallurgical engineers performed tests and issued a report on June 2, 1995, which identified several probable causes of the screw failure and raised additional questions for further investigation.

On June 1, 1995, Overall received a telephone call from Rich Miller, a supervisor with TVA's Services organization. Miller discussed creating a permanent position for Overall as a project administrator for the Services organization. On June 13, 1995, Overall received an anonymous threatening telephone call in which the caller stated: "You sure picked a fine time to bring up the screw issue at Watts Bar." The next day, on June 14, 1995, Overall received another anonymous threatening telephone call, in which the caller stated: "Mr. Overall, the screw issue won't keep Watts Bar from opening." Also on June 14, 1995, TVA management convened a large staff meeting during which it decided to rescind the June 2 metallurgical report and prepare a new report. On June 15, 1995, TVA management conducted another meeting regarding PER 246 and discussed the need to speed up its resolution to stay on schedule.

On June 16, 1995, Koehl served Overall with a written notification of involuntary transfer to the Services organization as an at-risk employee effective September 18, 1995. Overall received a third threatening anonymous telephone call on June 18, 1995, in which the caller stated: "We're really glad you're leaving Watts Bar." TVA issued a new metallurgical report on June 19, 1995, which did not identify any probable causes of the screw failure. Sometime in June 1995, after receiving the notification of involuntary transfer to an at-risk position, Overall applied for the permanent position that he had discussed with Miller on June 1.

Overall remained at Watts Bar until November 1995 to train his replacement and complete paperwork. On July 10, 1995, however, TVA management transferred responsibility for PER 246 away from Overall. After removing Overall from his duties regarding PER 246, TVA did not complete the remaining investigatory steps recommended in the CAP. Although the CAP had not been fully executed, TVA determined that the screw failure described in PER 246 did not present a safety problem that warranted any further investigation before commencing operation of the nuclear power plant in 1996.

TVA formally offered Overall the permanent position of project administrator in its Services organization in October 1995. Overall accepted this position, which he considered to be a secure and attractive job. Based on representations made by Miller, Overall anticipated that his new position would primarily involve providing his ice condenser expertise to various TVA nuclear power plants, including Watts Bar. In fact, however, TVA management did not request Overall's services at Watts Bar or any other TVA power plant. Although

TVA had represented to Overall that his position was budgeted for the 1997 fiscal year, TVA notified him on July 24, 1996, that he was being laid off, along with several other engineering employees, effective September 30, 1996, due to lack of funds.

After being terminated on September 30, 1996, Overall unsuccessfully sought other employment. In May 1997, Overall learned that Watts Bar needed assistance with its ice condenser over the summer, and Overall applied for the job. Despite Overall's expertise with the ice condenser, TVA chose to hire an outside contractor to do the work, even though the outside contractor did not have an engineer who had experience with the ice condenser system.

In June 1998, the Nuclear Regulatory Commission (NRC) learned of the 1995 screw failure with the ice condenser system at Watts Bar and initiated an investigation. The NRC concluded that TVA had failed to adequately investigate and correct the screw failure and that TVA had wrongfully closed its investigation of PER 246 knowing that the CAP had not been completed. The NRC found TVA's violation to be willful.

On January 15, 1997, Overall filed a *pro se* complaint against TVA with the DOL, alleging that TVA had retaliated against him for submitting and pursuing an investigation of PER 246. Overall filed his complaint pursuant to the whistleblower provision of the ERA, 42 U.S.C. § 5851, which prohibits entities licensed by the NRC from retaliating against employees for reporting and pursuing nuclear safety concerns. The ERA grants the DOL jurisdiction to investigate and resolve whistleblower complaints, subject to an appeal to the United States court of appeals for the circuit in which the alleged violation occurred. 42 U.S.C. §§ 5851(b), (c). On April 3, 1997, Overall filed a *pro se* addendum to his complaint, alleging more specif-

ically that TVA had retaliated against him by, among other things, deciding to transfer him to the Services organization as an at-risk employee in June 1995 and by terminating him effective September 30, 1996.

The Wage and Hour Division of the DOL conducted an investigation of Overall's complaint and concluded, in a written decision dated June 13, 1997, that TVA had retaliated against Overall for raising and pursuing nuclear safety concerns. TVA appealed this decision to a DOL administrative law judge (ALJ). On September 11, 1997, Overall, through counsel, amended his complaint to allege that TVA further retaliated against him by refusing to rehire him in the summer of 1997.

As part of his *de novo* review of the Wage and Hour Division's decision, the ALJ conducted an evidentiary hearing from December 16 through December 18, 1997. On April 1, 1998, the ALJ issued his thirty-seven page recommended decision and order (RDO), in which he found in favor of Overall. The ALJ found Overall to be a credible witness and found several of TVA's witnesses to be unbelievable. Among other things, the ALJ found that TVA management had engaged in an "organized scheme to remove Overall" as part of a "broad coverup" of the significant safety hazards identified by Overall in PER 246. TVA appealed the ALJ's ruling to the DOL Administrative Review Board (ARB).

A two-member panel of the ARB conducted a *de novo* review of the evidence and the ALJ's ruling and issued a fifty-two page final decision and order on April 30, 2001. Similarly to the ALJ, the ARB found that TVA had transferred Overall to the Services organization, terminated Overall, and refused to rehire Overall as part of a broad conspiracy to coverup the safety issues raised by Overall in PER 246.

TVA appeals the DOL's final decision to this court pursuant to 42 U.S.C. § 5851(c). Overall is an intervenor in the appeal.

## II.

The ERA whistleblower provision, 42 U.S.C. § 5851(c), mandates that this court's review of the DOL's final decision shall conform to the Administrative Procedure Act (APA), 5 U.S.C. § 706. Pursuant to the APA, this court may reverse an agency's findings and conclusions if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction" or "unsupported by substantial evidence." 5 U.S.C. § 706. This is a "highly deferential standard of review," and this court " 'defer[s] to the inferences that the [DOL] derives from the evidence.' " *Varnadore v. Secretary of Labor,* 141 F.3d 625, 630 (6th Cir.1998) (quoting *Lockert v. United States Dep't of Labor,* 867 F.2d 513, 519 n. 2 (9th Cir.1989)). "Under this standard, the court must consider whether there has been a clear error in judgment." *R.P. Carbone Constr. Co. v. Occupational Safety & Health Rev. Comm'n,* 166 F.3d 815, 818 (6th Cir.1998).

The DOL's factual determinations "must be affirmed if they are supported by substantial evidence," which is "more than a scintilla, but less than a preponderance, of the evidence." *Id.* "It is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached." *Id.* Moreover, this court "will not normally disturb the credibility assessments" of an administrative law judge who has observed the demeanor of the witnesses. *Litton Microwave Cooking Prods. Div., Litton Sys. v. National Resources Defense Council, Inc.,* 868 F.2d 854, 857 (6th Cir.1989).

Although this court reviews the DOL's purely legal conclusions *de novo,* we "defer somewhat to the agency because it is charged with administering the statute." *American Nuclear Res., Inc. v. Department of Labor,* 134 F.3d 1292, 1294 (6th Cir.1998). Therefore, this court "will uphold an interpretation if 'based on a permissible construction of the statute.' " *Id.* (citing *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). This court reviews the DOL's application of law to fact under the same deferential standard as it reviews the DOL's findings of fact. *Id.* If there is substantial evidence in the record as a whole to support the DOL's conclusions, this court may not reverse, "even if [the court] could justifiably have made a different choice judging the matter *de novo.*" *NLRB v. Brown–Graves Lumber Co.,* 949 F.2d 194, 196 (6th Cir.1991).

With the appropriate standard of review in mind, we first review the DOL's determination that Overall timely filed his complaint. According to the ERA whistleblower provision, an employee has 180 days from the date of a violation to file a complaint with the DOL. 42 U.S.C. § 5851(b)(1). Overall filed his initial complaint on January 15, 1997. Overall alleges that TVA violated the ERA whistleblower provision (1) on June 16, 1995, with the notification to him of involuntary transfer, (2) on July 24, 1996, with the notification to him of termination, and (3) in May 1997 by failing to rehire him. TVA does not challenge that Overall's complaint was timely filed as to the latter two incidents, but TVA asserts that Overall's complaint was untimely as to the June 16, 1995, notification.

The DOL determined that it was appropriate to toll the statute of limitations as to Overall's claim regarding the June 16, 1995, notification. The DOL, based on substantial evidence, found that TVA had fraudulently concealed the true nature of the position that Overall accepted in the Services organization, thereby lulling him

into not filing a claim on the mistaken belief that his new job was desirable and secure. The DOL correctly stated the law regarding under which circumstances fraudulent concealment is grounds for tolling a statute of limitations. For the statute of limitations to be tolled, a plaintiff must prove: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Hill v. Department of Labor*, 65 F.3d 1331, 1335 (6th Cir.1995) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

Based on Overall's testimony and other evidence, the DOL found that TVA management, specifically Rich Miller, represented to Overall on June 1, 1995, that a permanent position within the Services organization was being created for Overall. As represented to Overall, his duties in this position would include providing his ice condenser expertise to each of TVA's nuclear power plants, as well as to nuclear power plants outside of the TVA system. The position would carry the same pay and benefits as Overall's position at Watts Bar, and the position would be designated as permanent, rather than at-risk.

Overall did not apply for this permanent position initially, but he did apply for it once he received the June 16, 1995, notification of involuntary transfer to the Services organization as an at-risk employee. The DOL reasonably inferred from the evidence that, by guaranteeing him an equally desirable and secure job with the Services organization, TVA lulled Overall into refraining from filing a retaliation claim based on the June 16 notification. The fact was, however, that the position Overall accepted with the Services organization was not secure because it was not funded and was wholly dependent on TVA's choosing to request Overall's services at its nuclear power plants. Overall did not learn this fact until July 24, 1996, when TVA notified him that he was being terminated due to a lack of funds. Up until that point, TVA had assured Overall that his position with Services was funded through the 1997 fiscal year.

Substantial evidence supports the DOL's finding that TVA intentionally misrepresented to Overall the attractiveness and security of the Services organization position. The DOL reasonably concluded that TVA intentionally lulled Overall into refraining from filing a retaliation claim by convincing him that his position with TVA's Services organization was secure, when in fact it was unfunded. Substantial evidence also supports the DOL's finding that TVA continued to actively deceive Overall regarding the security of his position until July 24, 1996, when it notified him that his position was unfunded and was being eliminated.[1]

---

1. As an additional, independent basis for tolling the statute of limitations, the DOL relied on the continuing violation doctrine. The DOL found that the June 16, 1995, notification was part of a continuing retaliatory scheme of which the July 24, 1996, notification was also a part and, for that reason, Overall's claim was timely based on the continuing violation doctrine. In an opinion issued after the DOL's decision in this case, however, the Supreme Court held that the continuing violation doctrine cannot be applied in a Title VII case to save an otherwise untimely claim based on a discrete act such as termination, failure to promote, denial of transfer or refusal to hire. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). Because we affirm the DOL's decision to toll the statute of limitations based on a fraudulent concealment theory, we need not decide whether the DOL's application of the continuing violation doctrine in this case was appropriate in light of *Morgan*.

We next review the DOL's conclusion that TVA retaliated against Overall for engaging in protected conduct. The whistleblower provision of the ERA prohibits entities licensed by the NRC from retaliating against employees for reporting and pursuing nuclear safety concerns. 42 U.S.C. § 5851. To prevail in a retaliation claim under the ERA whistleblower provision, the complainant must demonstrate to the DOL that he engaged in protected activity, that he suffered an adverse employment action, and that the protected activity was a "contributing factor" to the adverse employment action. 42 U.S.C. 5851(b)(3)(C). The employer may avoid liability if it demonstrates by "clear and convincing evidence" that it would have taken the same adverse employment action even in the absence of the protected activity. 42 U.S.C. 5851(b)(3)(D). This particular burden shifting framework was codified in 1992 to address the whistleblower harassment and retaliation that Congress found to "remain all too common in parts of the nuclear industry." *Stone & Webster Eng. Corp. v. Herman*, 115 F.3d 1568, 1572 (11th Cir.1997) (quoting H. Rep. No. 102–474(VIII), at 79 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1953, 2282, 2297). "For employers, this is a tough standard, and not by accident. Congress appears to have intended that companies in the nuclear industry face a difficult time defending themselves." *Id.*

■ TVA does not dispute that Overall engaged in protected activity by submitting and pursuing PER 246. TVA also does not argue against any of Overall's allegations of adverse employment actions. TVA's contention is that substantial evidence does not support the DOL's finding that there existed a causal link between Overall's protected activity and the adverse employment actions he suffered.

The DOL did not find any direct evidence that TVA retaliated against Overall, but the DOL found sufficient circumstantial evidence to make this finding. In the absence of direct evidence, the DOL appropriately applied the burden shifting framework adopted by the Supreme Court in a line of cases beginning with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must first establish a prima facie case of discrimination by presenting evidence of circumstances that give rise to an inference of unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden of establishing a prima facie case is not onerous and is simply intended to eliminate the most common nondiscriminatory reasons for an adverse employment action. *Id.* at 253–54. Once the plaintiff has established a prima facie case, the defendant bears the burden of articulating some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 254–55. The plaintiff then has the opportunity to show that the legitimate reason articulated by the defendant is not true and is merely a pretext for discrimination. *Id.* at 255. Although the defendant bears an intermediate burden of production, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's articulated legitimate reason is false, may be enough alone to allow the trier of fact to find against the defendant. *Id.* at 148.

Substantial evidence supports the DOL's finding that Overall met his burden of establishing a prima facie case and ultimately met his burden of proving that TVA unlawfully retaliated against him.

First, the DOL reviewed the evidence regarding Overall's unique expertise with the Watts Bar ice condenser system and the uniformly positive performance evaluations that TVA gave Overall. For instance, in March 1995, TVA presented Overall with the Power of Excellence Award in recognition of his good work on the ice condenser system. The DOL reasonably found it curious that TVA chose to remove Overall from working on the ice condenser system just three months after presenting him with this award, and the DOL reasonably focused on the events that occurred between March 1995 and June 16, 1995, when TVA notified Overall of the transfer decision. The only significant events that occurred within this time frame were Overall's discovery of the screw failure, subsequent submission of PER 246, and Overall's development and implementation of the CAP.

Once Overall submitted PER 246, he pursued the CAP that he developed with "zeal and competence," according to the DOL. Meanwhile, TVA managers were meeting to find ways to prevent further costly delays to commencing operations at Watts Bar. The DOL credited Overall's testimony that TVA managers were discouraging the submission of PERs and complaining about the potential costs of any delay that might be caused by PER 246 and the CAP developed by Overall. The DOL also cited the threatening anonymous telephone calls Overall received regarding PER 246.

On June 14, 1995, two days before notifying Overall of his involuntary transfer, TVA managers decided to rescind the June 2, 1995, metallurgical report that was prepared pursuant to the CAP initiated by Overall. This June 2 report raised many troubling questions that, if investigated, could have further delayed the startup of operations at Watts Bar. Then, on July 10, 1995. TVA transferred responsibility for PER 246 away from Overall. Once Overall was removed from the process, TVA declined to follow through with the remaining investigatory steps called for in the CAP and summarily closed the file on PER 246, an action the NRC subsequently termed a "willful" violation of proper procedure in its reprimand of TVA.

From all this circumstantial evidence, the DOL reasonably inferred that TVA managers were engaging in a coverup of PER 246 to prevent any further costly delays to commencing operations at Watts Bar. Furthermore, the DOL reasonably inferred that part of this coverup included an organized scheme to remove Overall from Watts Bar, while lulling him into not filing a retaliation claim by promising him what was represented to be an equally attractive and secure job in the Services organization.

Substantial evidence also supports the DOL's finding that TVA's articulated legitimate reasons for its adverse employment actions against Overall are false. TVA claims that it removed Overall from his position at Watts Bar because the ice condenser system specialist position did not constitute a full-time position. The DOL, however, found this reason to be false based on the testimony of Overall's replacement, Gary Jordan, who testified that he spent at least 95% of his time on the ice condenser system after Overall left. TVA also claims that it transferred Overall because he was not a degreed engineer and did not have the job flexibility of a degreed engineer. The DOL, however, found this reason to be false based on the evidence that Overall had clearly demonstrated his technical proficiency on the ice condenser system and had also performed several other technical jobs demonstrating his flexibility. Furthermore, the DOL relied on the fact that TVA did not transfer John Ferguson, another non-degreed engineer

who had the same engineering equivalency score as Overall.

TVA also asserts that its September 1994 notification to Overall of his potential at-risk status demonstrates that TVA decided to transfer Overall before he engaged in any protected activity. The DOL reasonably rejected this assertion because the September 1994 notification, which stated that Overall "may" be transferred effective July 3, 1995, was plainly not indicative of a final decision. Furthermore, TVA did not transfer Overall effective July 3, 1995. The DOL reasonably concluded from substantial evidence that TVA made the decision to remove Overall from Watts Bar only after he submitted PER 246 on April 21, 1995.

In rejecting TVA's explanations of Overall's removal from Watts Bar, the DOL also placed great weight on the credibility determinations made by the ALJ, who observed each of the witnesses testify. The ALJ found that Overall testified "in a straight forward, detailed, sincere and consistent manner." Conversely, the ALJ found that several of TVA's witnesses "presented either inconsistent, vague, or illogical testimony."

From the weight of the circumstantial evidence, combined with its finding that TVA's explanations were incredible, the DOL concluded that TVA engaged in an organized scheme to remove Overall as part of a broad coverup of the safety concerns identified by Overall in PER 246. Pursuant to the deferential standard of review applicable in this appeal, we conclude that the DOL's findings are based on substantial evidence and are in accordance with the law.

■ Finally, TVA argues that the DOL overreached its authority by deciding several technical issues in the course of making its decision. The TVA correctly notes that the DOL does not have jurisdiction to regulate safety matters at nuclear facilities. This argument, however, is baseless because the DOL's decision in this matter in no way regulates safety matters at any nuclear facility. The DOL has jurisdiction to resolve ERA whistleblower complaints, and in its written decision resolving Overall's ERA whistleblower complaint, the DOL appropriately discussed the underlying technical issues relating to Overall's protected activity. By so doing, the DOL did not exceed its jurisdiction.

### III.

For all the foregoing reasons, we affirm the DOL's decision.