NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0070n.06
Filed: January 25, 2006

**Case Nos. 04-3487, 04-3926**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| VERNON R. BELT, | ) |
|     Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) PETITION FOR REVIEW OF ORDER |
| UNITED STATES DEPARTMENT OF LABOR., | ) OF THE UNITED STATES |
|  et al. | ) DEPARTMENT OF LABOR, |
|     Respondent-Appellee. | ) ADMINISTRATIVE REVIEW |
| | ) BOARD |

**Before: KEITH and BATCHELDER, CIRCUIT JUDGES; OBERDORFER[1], District Judge.**

**PER CURIAM**. Complainant-Appellant Vernon R. Belt ("Belt") appeals the order of the Administrative Review Board for the United States Department of Labor dismissing his complaint. Belt's complaint alleged that his employer, Respondent-Appellee United States Enrichment Corporation ("USEC"), retaliated against him for engaging in protected activity in violation of the whistle-blower provision of the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851, and its implementing regulations at 29 C.F.R. § 24. Belt's original complaint was untimely, and thus, we **AFFIRM** the ARB's order dismissing Belt's complaint.

**I. BACKGROUND**

**A.     Factual Background**

In March 1976, USEC's predecessor hired Belt as a janitor for the Paducah Gaseous Diffusion Plant ("Paducah") in Paducah, Kentucky. In 1989, after several promotions and upon his receipt of

---

[1]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

a bachelor's degree, Belt was promoted to Fire Engineering Assistant (Senior), where he worked with all of the fire equipment, including the sprinkler systems. In this position, Belt oversaw the field operations. Belt ordered all fire equipment and assumed the Fire Alarm Systems Manager's duties, including the annual inspection and follow-up on the 400,000 sprinkler heads located throughout the various buildings at Paducah. His duties included examining all four quadrants of the plant annually, inspecting the sprinkler systems to ensure they were clear and undamaged, and making note of any deficiencies. Specifically, Belt was responsible for filing assessment and tracking reports ("ATR") with USEC regarding any deficiencies he found in the system.

In 1997, the Nuclear Regulatory Commission's ("NRC") rules and regulations were made applicable to USEC. As a licensee of the NRC, USEC is required to maintain certain environmental standards for license certification. USEC's production process is governed by numerous health and safety regulations including those of both the NRC and the Occupational Safety and Health Administration. Therefore, USEC, as an employer, is subject to the ERA, 42 U.S.C. § 5851. On May 5, 2000, USEC announced a reorganization plan that included a Voluntary Reduction-in Force ("VRIF") Program with enhanced benefits that had an open application period until May 24, 2000 for all full-time salaried employees at Paducah. (J.A. at 587.) At that time, Belt was approximately 18 months shy of his full retirement date, and thus, he decided not to apply for the VRIF because "it really wasn't to my benefit" and "[i]t wouldn't have been to my advantage." (J.A. at 1177, 1253.) Soon after the VRIF open application period closed, Belt learned from USEC manager, Pat Jenny ("Jenny"), that pursuant to the company's reorganization plan his position, fire protection engineer, was being eliminated. Belt testified that Jenny informed him that she did not know of another position in the plant that he could fill and recommended that he discuss his options with human

resources. (J.A. at 1178-79.) After speaking with human resources and benefits personnel, Belt concluded that he would not have a job with USEC anymore. Belt decided that his only option was to volunteer for the Involuntary Reduction-in-Force ("IRIF") Program, which USEC announced after the VRIF period closed, in order to receive reduced retirement or severance pay.

On June 22, 2000, Belt signed a USEC memorandum acknowledging his request to be selected for the impending IRIF in exchange for severance pay eligibility and other benefits. The memorandum read as follows:

> [b]y signing this memo, you confirm that you have requested to be selected for RIF and that you have made this decision voluntarily and without coercion of any kind. You also confirm that you understand that your request will result in termination of your USEC employment on a RIF date to be determined by the company. Your request is not revocable after you sign this memo[.]

(J.A. at 625.) The final paragraph of the document reiterated, in bold print, that Belt acknowledged that he had "voluntarily requested to be selected for RIF" and that he understood his employment with USEC would be "terminated as a result." *Id.* The memorandum was unequivocal and irrevocable in its notice to Belt that his USEC employment was terminated. Belt also testified that June 22, 2000, was his last day at work, (J.A. at 1236-37), and while he was "coming back the 14th [of July] for a checkout . . . I was basically unemployed. I had no job." (J.A. at 1475-76.) On June 29, 2000, Belt received a USEC memorandum outlining the terms of his IRIF and stating that his employment with USEC would terminate on July 14, 2000. ( J.A. at 626.) On July 14, 2000, Belt returned to Paducah for a final check out.

## B.    Procedural Background

On December 29, 2000, Belt filed a complaint with the Occupational Safety and Health Administration ("OSHA") of the United States Department of Labor. Belt filed his complaint under

§ 211(b) of the ERA, 42 U.S.C. § 5851, the federal whistle-blower statute. Under the ERA, covered employees are protected from retaliation with regard to the terms and conditions of their employment for reporting environmental violations of the statute. Belt alleged that his employer, USEC, retaliated against him in violation of the statute because he reported USEC's violations of the ERA. He claimed he was harassed and discriminated against for engaging in protected activity. Belt argued that the retaliation included his termination from USEC employment through the IRIF. OSHA investigated Belt's complaint and, on April 18, 2001, concluded the complaint lacked merit.

On April 30, 2001, Belt appealed OSHA's decision and requested a hearing before an Administrative Law Judge. The hearing was held on November 14-15, 2001, before Administrative Law Judge Thomas F. Phalen, Jr. ("ALJ Phalen"). ALJ Phalen concluded that Belt's complaint was timely filed, but that his employment was not terminated as a result of his protected activity.

Belt and USEC appealed ALJ Phalen's recommended decision to the United States Department of Labor's Administrative Review Board ("ARB"). The ARB rejected ALJ Phalen's determination that Belt's complaint was timely filed. The ARB concluded that Belt's December 29, 2000 complaint was filed more than 180 days after Belt received the June 22, 2000 notice of termination from USEC. Therefore, Belt's complaint was deemed untimely. The ARB also rejected all of Belt's proffered grounds for tolling the 180-day statutory filing period to consider Belt's complaint timely. Specifically, the ARB rejected Belt's argument that he was subjected to a hostile work environment at USEC. The ARB also concluded, in the alternative, that even if Belt had been subjected to hostile work environment, none of the acts offered by Belt as evidence of a hostile work environment occurred within 180 days of the filing of his complaint, and thus, his complaint would still be untimely. Finally, the ARB rejected Belt's argument that his claim was timely under a

"continuing violation" theory. Therefore, on February 26, 2004, the ARB dismissed Belt's complaint as untimely.

On June 25, 2004, the ARB denied Belt's motion for relief from the ARB's original decision to dismiss his complaint. Thereafter, Belt motioned the ARB to vacate its February 26, 2004 decision pursuant to Federal Rule of Civil Procedure 60(b), on the grounds of: (1) misrepresentation by USEC, (2) newly discovered evidence, and (3) other reasons justifying relief. The ARB concluded all of these grounds lacked merit and adhered to its February 26, 2004 decision. Belt timely filed his petition for review with this Court.[2]

## II.ANALYSIS

### A.    Standard of Review

The whistle-blower provision of the ERA instructs this Court to review the ARB's final decision in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 42 U.S.C. § 5851(c). Pursuant to the APA, this Court may reverse an agency's findings and conclusions only if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law" or "in excess of statutory jurisdiction" or "unsupported by substantial evidence." 5 U.S.C. § 706. This is a "highly deferential standard of review," and this Court "defer[s] to the inferences that the Secretary derives from the evidence, not to those of the ALJ[.]" *Varnadore v. Secretary of Labor*, 141 F.3d 625, 630 (6th Cir. 1998) (internal quotation marks and citation omitted).

---

[2]We note that 42 U.S.C. § 5851(c)(1) grants this Court jurisdiction to directly review the ARB's decision in this case: "[a]ny person adversely affected or aggrieved by an order issued under subsection (b) of this section may obtain review of the order in the United States court of appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred." Belt's complaint arose in Kentucky, a state under the jurisdiction of this Circuit.

"The ARB acts for the Secretary, and is responsible for issuing final agency decisions." *Id.* (internal quotation marks and citation omitted). "Under this standard, the court must consider whether there has been a clear error in judgment." *R.P. Carbone Constr. Co. v. Occupational Safety & Health Rev. Comm'n*, 166 F.3d 815, 818 (6th Cir. 1998) (citation omitted).

The agency's factual determinations "must be affirmed if they are supported by substantial evidence[,]" which is "more than a scintilla, but less than a preponderance, of the evidence." *Id.* (citation omitted). "It is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached." *Id*. (citation omitted). Moreover, this Court "will not normally disturb the credibility assessments" of an administrative law judge "who has observed the demeanor of the witnesses." *Litton Microwave Cooking Prods. Div., Litton Sys., Inc. v. Nat'l Labor Relations Bd.*, 868 F.2d 854, 857 (6th Cir. 1989) (internal quotation marks and citations omitted).

Although we review the purely legal conclusions reached by an agency *de novo*, we "defer somewhat to the agency because it is charged with administering the statute." *Am. Nuclear Res., Inc. v. United States Dep't of Labor*, 134 F.3d 1292, 1294 (6th Cir. 1998). Therefore, this Court "will uphold an interpretation if based on a permissible construction of the statute." *Id.* (internal quotation marks and citation omitted). This Court reviews the agency's application of law to fact under the same deferential standard as it reviews the agency's findings of fact. *See id*. If there is substantial evidence on the record, as a whole, to support the ARB's decision, then this court may not reverse, "even if [the court] could justifiably have made a different choice judging the matter *de novo*." *Tennessee Valley Auth. v. United States Secretary of Labor*, 59 Fed. Appx. 732, 736 (6th Cir. March 6, 2003) (unpublished opinion) (citation omitted).

**B.      Discussion**

Case Nos. 04-3487, 04-3926; *Belt v. United States Enrichment Corp.*

Pursuant to § 5851(b)(1) of the ERA, any employee who believes he has been discharged or otherwise discriminated against by any person in violation of the ERA may, "*within 180 days* after such violation occurs file (or have any person file on his behalf) a complaint with the Secretary of Labor . . . alleging such discharge or discrimination." 42 U.S.C. 5851(b)(1) (emphasis added). The statute's implementing regulations also specify, "[u]nder the Energy Reorganization Act of 1974, any complaint shall be filed within 180 days after the occurrence of the alleged violation." 29 C.F.R. § 24.3(b)(2). We review for substantial evidence the ARB's conclusion that a claim was untimely. *Sasse v. United States Dept. of Labor*, 409 F.3d 773, 782 (6th Cir. 2005) (citation omitted).

### 1.     Belt's December 29, 2000 complaint was untimely.

Substantial evidence in the record supports the ARB's decision to dismiss Belt's complaint as untimely.[3] The ARB correctly observed that Belt's cause of action against USEC accrued on the date he was notified that USEC was terminating him, which was June 22, 2000. On June 22, 2000, Belt signed the irrevocable memorandum acknowledging his decision to be selected for the IRIF. The memorandum explicitly stated Belt's employment with USEC would be terminated as a result of his decision to volunteer for the IRIF Program. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that a plaintiff's cause of action accrues when he receives notice of

---

[3]Preliminarily, we reject Belt's claim that USEC waived the statute of limitations defense. Contrary to Belt's assertion that USEC did not raise the statute of limitations issue when framing the issues to be presented to ALJ Phalen at the hearing, the record demonstrates that USEC raised the issue as its first point in their opening statement, "the United States Enrichment Corporation, through its witnesses, will basically be focusing on three issues. First, whether Mr. Belt timely filed his complaint with the Department of Labor." (J.A. at 1112-13.) In light of the fact that the issue was raised by USEC at the commencement of the evidentiary hearing and fully briefed before both the ALJ and the ARB, we conclude that USEC sufficiently preserved the issue of whether Belt's complaint was timely for our review.

termination, not when his employment actually ceases, "the only alleged discrimination occurred – and the filing limitations period therefore commenced – at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure – the eventual loss of a teaching position – did not occur until later."); *see also Janikowski v. Bendix Co.*, 823 F.2d 945, 947-48 (6th Cir. 1987) (applying *Ricks* to an ADEA case and rejecting Plaintiff's claim that the alleged act of discrimination occurred the day he was actually discharged, November 30, 1981. Instead, this Circuit affirmed the district court's finding that Plaintiff's complaint was untimely because the alleged unlawful practice occurred on September 4, 1980, the day Plaintiff received notification of his eventual termination.). In addition, the fact that the effective date of Belt's termination was not until July 14, 2000 is irrelevant. *See Ricks,* 449 U.S. at 257 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.").

Belt argues that the June 22, 2000 notice of termination was not definite and final because he could have been recalled to return to work – as was one of his similarly situated colleagues – at any time prior to July 14, 2000. Given the unequivocal language in the June 22, 2000 memorandum notifying Belt of his irrevocable termination from USEC, which Belt signed, we must reject this argument. Furthermore, even if we were to agree with Belt that the notice of termination was indefinite, our conclusion would remain unchanged. In *Kessler v. Bd of Regents*, this Circuit stated, "even if the Board had specifically stated in its June 30 letter that its decision was *not* final, it would have been sufficient to commence the running of the limitations period." 738 F.2d 751, 755-56 (6th Cir. 1984).

   **2.      Neither Belt's hostile work environment claim nor his continuing violation**

**theory tolls the 180-day statutory filing period for his complaint.**

Belt attempts to overcome the fact that his complaint is untimely by offering various grounds for tolling the 180-day statutory filing period. He argues he was subjected to a hostile work environment, that the continuing violation theory applies, and that he was the victim of constructive discharge. Substantial evidence on the record supports the ARB's conclusion that Belt's reliance on a hostile work environment claim and a continuing violation theory to make his claim timely fails. Even if we assume, without deciding, that Belt had been subjected to a hostile work environment while employed at USEC, the conduct that he alleges contributed to the hostile work environment occurred more than 180 days before he filed his December 29, 2000 complaint, and thus, that conduct cannot save Belt's untimely complaint. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("We also hold that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, *so long as an act contributing to that hostile work environment takes place within the statutory time period*.") (emphasis added). Belt's reliance on conduct that occurred in 1997 and 1999 to establish a hostile work environment is clearly impermissible because that conduct falls outside of the 180-day statutory filing period. The same rationale applies to Belt's continuing violation theory, and thus, it fails, as well.

Finally, given our conclusion that Belt's claim accrued on June 22, 2000, when he received unequivocal notice of his termination, we also reject Belt's argument that the effective date of his termination, July 14, 2000, was a component of his discharge and therefore formed part of the alleged hostile work environment or that it provides the basis for a continuing violation theory.

**3.      Belt was not the victim of a constructive discharge by USEC.**

Belt's argument that he was the victim of a constructive discharge fails. In his brief, Belt relies upon the case, *Logan v. Denny's, Inc.*, 259 F.3d 558 (6th Cir. 2001) to articulate the standard for proving a constructive discharge claim. Specifically, Belt states that an employer is guilty of making a constructive discharge when "[the employer] intended to cause [the employee] to resign or that [his] resignation was a reasonably foreseeable consequence of [the employer's] actions." (Appellant's Br. at 35) (quoting *Logan*, 259 F.3d at 567). Notably, Belt fails to acknowledge that he carries the burden of making this showing and he fails to provide the first part of the standard. Specifically, the *Logan* court stated,

> in order to show that she suffered a constructive discharge, Plaintiff had to come forward with evidence to demonstrate that the working conditions under which she labored were so difficult that a reasonable person standing in her shoes would have felt compelled to resign; and that Defendant intended to cause Plaintiff to resign or that her resignation was a reasonably foreseeable consequence of Defendant's actions.

*Logan*, 259 F.3d at 567.

After reviewing the record, we conclude that Belt has not met this substantial burden. First, there is no evidence in the record that Belt's working conditions were so unbearable that he felt compelled to resign for this reason. Second, the record does not support a finding that USEC intended to cause Belt to resign or that USEC encouraged him to do so. To the contrary, ALJ Phalen found Jenny's testimony credible that although she told Belt his fire protection engineer title was being eliminated, she also told him that his work duties still had to be performed. In addition, Belt's supervisor at the time, John Smith, also testified that he advised Belt against volunteering for the IRIF, "I told him . . . [it does not make sense] when he come in and told me that. I said, Vernon, you can't do that. How do you volunteer for something that's involuntary." (J.A. at 1380.)

Therefore, the evidence in the record does not support Belt's assertion that he was the victim of a constructive discharge, and thus, we reject this argument.

### 4.        Belt's Additional Arguments Lack Merit.

First, Belt argues that the ARB applied the wrong legal standard in assessing the applicability of the hostile work environment exception to the running of the statute of limitations.  It is true that at one point in its opinion the Board misstates, in a *potentially* material way, the applicable standard. *Compare Morgan,* 536 U.S. at 116 (requiring a complainant to establish a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is *sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment") (emphasis added) *with* ARB Op. at 8 (J.A. at 58) ("To prevail on a hostile work environment claim, the complainant must establish that the objectionable conduct was *extremely serious or serious and pervasive*.") (emphasis added).  In the next paragraph of its decision, however, the ARB corrects its misstatement by requiring only that Belt demonstrate that the alleged discrimination was "*sufficiently severe or pervasive* to alter the conditions of employment and create an abusive working environment." *Id*. (emphasis added).  Our review of the balance of the ARB decision and the record in this case leaves this Court confident that the ARB decision did not depend on its initial, inaccurate statement of the applicable law.

Second, Belt argues that the ARB erred in holding the hostile work environment exception inapplicable where the NRC substantiated a "chilled environment" for the reporting of safety violations at the facility at which he worked.  Even if we assume, without deciding, that a chilled environment did in fact exist at USEC, we conclude that the existence of such a chilled environment

is not, by itself, enough to establish that Belt was exposed to a hostile work environment.

Third, Belt argues that the continuing violation theory tolled the statute of limitations because USEC's violations of his rights continued until its February 2001 refusal to rehire him. We reject this argument because Belt has not established any violation of his rights between June 22, 2000 and December 19, 2000, the period of the running of the applicable statute of limitations.

Finally, we also reject Belt's argument that the ARB abused its discretion in refusing to reopen its final decision and order dismissing Belt's complaint pursuant to Federal Rule of Civil Procedure 60(b)(2), (3), or (6). The record in this case does not support granting such a motion. Specifically, the "newly discovered evidence" offered by Belt – Jenny's testimony given in a separate, unrelated case – does not contradict or undermine the testimony offered by Jenny in Belt's case. In addition, the record does not support a finding of fraud, misrepresentation, or other misconduct by USEC. Therefore, given the substantial evidence on the record and finding no other reasons justifying relief from the operation of judgment, we conclude that the ARB did not abuse its discretion in refusing to reopen its final decision and order dismissing Belt's complaint.

### III.CONCLUSION

Having concluded that the decision of the ARB was supported by substantial evidence and for all of the foregoing reasons, we **DENY** the petition for review and **AFFIRM** the ARB's order dismissing Belt's complaint.